T.C. Memo. 2002-288

UNITED STATES TAX COURT

FAY DALTON, Petitioner, AND ROBERT DALTON, Intervenor <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8873-00.                    Filed November 25, 2002.

Fay Dalton, pro se.

Robert Dalton, pro se.

<u>Ann L. Darnold</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, <u>Judge</u>:  Respondent determined a deficiency in petitioner and intervenor's Federal income tax for 1995 of $4,123.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue.

The issue for decision is whether petitioner is entitled to relief from joint and several liability under section 6015(b), (c), or (f) with respect to the above 1995 tax deficiency determined by respondent. Intervenor does not claim a right to such relief. Rather, intervenor testified at trial solely to contest petitioner's right thereto.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time the petition was filed, petitioner resided in Oklahoma City, Oklahoma.

In 1995, petitioner and intervenor worked at various jobs, and intervenor was unemployed for approximately 5 months.

On January 19, 1996, petitioner and intervenor were divorced.

On their 1995 timely filed joint Federal income tax return, petitioner and intervenor reported taxable income of $29,775. Petitioner and intervenor's return was prepared by a tax return preparer.

On audit, respondent determined that petitioner and intervenor received $15,626 in additional income not reported on their 1995 joint Federal income tax return, as set forth below:

|                          | Amount   |
|--------------------------|----------|
| Pension income           | $10,686  |
| Unemployment compensation | 4,280   |
| Barter income            | 472      |
| State income tax refund  | 188      |
| Total                    | $15,626  |

During 1995, petitioner knew that intervenor received the above pension income, unemployment compensation, and State income tax refund, and petitioner was aware that intervenor and Itex, the company from which intervenor received the barter income, had some relationship.

On April 23, 1997, respondent issued to petitioner and intervenor the notice of deficiency for 1995 reflecting the above additional items of income and the tax deficiency of $4,123. Neither petitioner nor intervenor petitioned this Court for a redetermination of the deficiency.

On September 22, 1997, respondent assessed the $4,123 deficiency against petitioner and intervenor. Subsequently, respondent assessed $407 in interest and penalties against petitioner and intervenor.

In collection of the above total $4,530 in tax, interest, and penalties that had been assessed against petitioner and intervenor, respondent applied a credit of $2,137 for funds that had been withheld by respondent from intervenor's 1995 pension income. Also, respondent withheld from intervenor income tax refunds due intervenor for 1996 and 1997 in the amounts of $411

and $211, respectively. From petitioner, respondent withheld an income tax refund due petitioner for 1997 in the amount of $940, and respondent levied against petitioner's wages and received $133.[1] Petitioner also made payments in accord with an installment agreement entered into with respondent until the balance of the total $4,530 assessed liability against petitioner and intervenor was paid to respondent in full. The schedule below sets forth the dates on which petitioner made payments to respondent, the amount of the payments, and the source of each payment:

| Payments Made By Petitioner | | |
| --- | --- | --- |
| Date | Amount | Source of Payment |
| Mar. 9, 1998 | $940 | 1997 income tax refund |
| Mar. 19, 1998 | 133 | Garnished wages |
| Apr. 22, 1998 | 200 | Installment agreement |
| May 6, 1998 | 200 | Installment agreement |
| May 28, 1998 | 135 | Installment agreement |
| June 26, 1998 | 50 | Installment agreement |
| July 23, 1998 | 150 | Installment agreement |
| Total | $1,808[2] | |

---

[1] Petitioner introduced a pay stub from her employer reflecting total garnished wages of $346. Petitioner, however, has not provided evidence that the total $346 in garnished wages shown on petitioner's pay stub was completely paid to respondent. We accept respondent's evidence of the $133 relating to petitioner's wages that were levied against and applied as a credit against petitioner's 1995 tax liability.

[2] Respondent refunded to petitioner certain additional amounts representing overpayments of the $4,530 total due with respect to petitioner and intervenor's 1995 joint Federal income tax liability.

On February 8, 1999, petitioner filed with respondent Form 8857, Request for Innocent Spouse Relief, in which petitioner sought to be relieved of liability from and to be refunded the above entire $1,808 she had paid.

Respondent considered petitioner's request for relief under section 6013(e) (for the payments that petitioner made prior to July 22, 1998) and under section 6015(b), (c), and (f) (for the one $150 payment petitioner made on July 23, 1998).

On January 25, 2000, respondent denied petitioner's request for relief from joint liability under section 6013(e). On May 17, 2000, respondent issued to petitioner a final notice of determination in which respondent denied petitioner's request for relief from joint liability under section 6015(b), (c), and (f).

OPINION

Generally, taxpayers filing joint Federal income tax returns are jointly and severally liable for all taxes due. Sec. 6013(d)(3). In limited situations, however, taxpayers may be relieved of joint liability.

Prior to enactment of section 6015, relief from joint and several liability was available under section 6013(e) if a taxpayer met the following requirements: (1) The joint return contained a substantial understatement of tax attributable to grossly erroneous items of the spouse not seeking relief; (2) the spouse seeking relief established that in signing the return, the

spouse did not know, and had no reason to know, of the substantial understatement; and (3) under the circumstances, it would be inequitable to hold the spouse liable for the tax liability relating to the substantial understatement.

Based on Congress's conclusion that the provisions of section 6013(e) granting relief from joint liability were inadequate, S. Rept. 105-174 at 55 (1998), 1998-3 C.B. 537, 591, and to make relief from joint liability more accessible, H. Conf. Rept. 105-599, at 249 (1998), 1998-3 C.B. 747, 1003, Congress in 1998 enacted section 6015. Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3201(a), 112 Stat. 734.

Section 6015 applies to tax liabilities arising after July 22, 1998, and to tax liabilities arising on or before July 22, 1998, but remaining unpaid as of such date. RRA 1998 sec. 3201(g), 112 Stat. 740.

Respondent argues that our review of petitioner's claim for relief from joint liability under section 6015 is limited to $150 (the amount remaining unpaid as of July 22, 1998, the effective date of section 6015).

Section 6015 has been applied to a taxpayer's entire tax liability where the liability arose before the effective date of section 6015 but where the entire liability remained unpaid on July 22, 1998. See Vetrano v. Commissioner, 116 T.C. 272 (2001);

King v. Commissioner, 115 T.C. 118 (2000).  No relief may be
granted under section 6015 to a taxpayer who files a stand-alone
petition for such relief and whose liability was paid in full
before the effective date of section 6015.  See Brown v.
Commissioner, T.C. Memo. 2002-187.  Respondent asks us to decide,
however, the extent to which a taxpayer may qualify for relief
under section 6015 where the taxpayer's liability arose prior to
the effective date of section 6015, but where only a portion of
the liability remained unpaid as of the date of enactment.

Recently, in Flores v. United States, 51 Fed. Cl. 49 (2001),
the Court of Federal Claims ruled on this issue.  The court
considered and granted, under section 6015(f), relief with
respect to a taxpayer's entire tax liability including the
portion of the liability that was paid prior to July 22, 1998,
the effective date of section 6015.  The court stated:

> Congress * * * intended the effective date provision to
> be consonant with the remainder of the statute, thereby
> allowing the innocent spouse relief of section 6015(b)
> and (c), and with them the relief afforded by section
> 6015(f), to apply to any liability for a particular
> taxable year providing it was not fully paid as of the
> effective date.  [Id. at 55.]

In support of its holding in Flores, the Court of Federal
Claims compared the effective date language of section 6015 to
the language of section 6511(a) that triggers the statute of

limitations for filing a timely claim for refund based upon when a tax is "paid".

> Courts interpreting * * * [the sec. 6511(a) limitation on filing a claim for refund, and not the sec. 6511(b) limitation on the amount of the refund] have held that the limitation period begins to run as to an entire tax liability only when the last dollar of the liability is paid, reasoning that "the tax liability is unitary and not discharged until paid in full."  [Id. at 55 (quoting Union Trust Co. v. United States, 70 F.2d 629, 630 (2d Cir. 1934)).]

Our resolution of the facts in this case does not require us to decide the Flores issue.

Relying on section 6015(b), (c), and (f), petitioner seeks three grounds for relief from joint and several liability.

Relief is available under section 6015(b) (similar to former section 6013(e)) if the following requirements are satisfied: (1) The joint return contains an understatement of tax attributable to the spouse not seeking relief; (2) the spouse seeking relief establishes that in signing the return he or she did not know, and had no reason to know, that there was an understatement of tax; (3) taking into account all the facts and circumstances, it would be inequitable to hold the spouse seeking relief liable for the deficiency; and (4) the spouse seeking relief timely elects the benefits of section 6015(b).

In general, this Court has concluded that a relief-seeking spouse knows or has reason to know of an understatement of tax if

such spouse knows of the transaction that gave rise to the understatement. E.g., <u>Jonson v. Commissioner</u>, 118 T.C. 106, 115 (2002).

Relief is available under section 6015(c) only with respect to a joint tax deficiency relating to taxpayers who are divorced, legally separated, or otherwise living apart. A taxpayer's election under section 6015(c) is not valid, however, upon a showing by respondent that the taxpayer had actual knowledge of an item giving rise to the tax deficiency. Also under section 6015(e)(3)(A)[3] no credit or refund is available under section 6015(c) with respect to amounts paid. Therefore, a taxpayer who qualifies for relief under section 6015(c) can be relieved of liability only with respect to an unpaid liability.

Lastly, under section 6015(f) respondent is granted discretion to award relief where relief is otherwise unavailable under section 6015(b) or (c) if the facts and circumstances indicate that it would be inequitable to hold the spouse seeking relief liable for the deficiency. Respondent's denial of equitable relief under section 6015(f) is reviewable under an abuse of discretion standard. See <u>Cheshire v. Commissioner</u>, 115 T.C. 183, 198 (2000), affd. 282 F.3d 326 (5th Cir. 2002); <u>Butler v. Commissioner</u>, 114 T.C. 276, 292 (2000).

---

[3] Sec. 6015(e)(3)(A) was redesignated in 2000 as sec. 6015(g)(3). Consolidated Appropriations Act, 2001, Pub. L. 106-554, App. G, sec. 313, 114 Stat. 2763A-641.

Because the 1995 tax liability was paid in full, no relief is available to petitioner under section 6015(c).  Petitioner admits to knowing about the pension income, unemployment compensation, and State income tax refund and is therefore not eligible for relief from joint liability under section 6015(b) with respect to those items of unreported income.

As to the $472 in barter income, respondent argues that petitioner does not qualify for relief under section 6015(b) because petitioner's knowledge of intervenor's relationship with Itex gave petitioner reason to know of the income earned by intervenor from the bartering activity.  We agree.

Although some factors arguably support petitioner's claim to equitable relief under section 6015(f) as to the total $1,808 petitioner paid, the evidence does not establish that respondent abused his discretion in denying such relief.  We note particularly petitioner's actual knowledge of three of the four items of unreported income, and we note petitioner's various tax protester arguments made herein.

Petitioner is not entitled to relief from any portion of the tax, interest, and penalties she paid with respect to her 1995 joint Federal income tax liability.

<u>Decision will be entered for respondent</u>.